509 So.2d 1192 (1987)
Kim CURTIS, Appellant,
v.
FLORIDA CORRECTIONAL INSTITUTE and Division of Risk Management, Appellees.
No. BM-328.
District Court of Appeal of Florida, First District.
June 26, 1987.
Rehearing Denied August 14, 1987.
*1193 Stan W. Strickland of Hurt, Parrish & Dalton, Orlando and Bill McCabe of Shepherd, McCabe & Cooley, Orlando, for appellant.
John E. McLain, III of Cooper, Rissman, Weisberg, Orlando, for appellees.
ERVIN, Judge.
Kimberly Curtis, the claimant in this workers' compensation case, appeals the deputy commissioner's (dc) order denying the authorization of her family physician, temporary total disability (TTD) benefits, the payment of her medical bills during hospitalization, as well as costs, penalties, interest and attorney's fees. We find that the de erred in rejecting the testimony of the claimant's family physician and treating psychiatrist, who both testified that the claimant's depression and periods of hospitalization were causally related to her industrial accident. We therefore reverse and remand.
The claimant was employed as a registered nurse at the Florida Correctional Institute on August 24, 1982, and, while attempting to administer an injection to an inmate, was kicked on the right side of her mouth and shoulder. The injury was initially diagnosed as a pulled muscle in her shoulder. Several months later, the claimant began experiencing ear aches and pain in her jaw. The pain worsened, and in May 1983, she was diagnosed as having temporomandibular joint dysfunction (TMJ), for which surgery was performed in March 1984.
Following the surgery, the claimant, although still working at the Correctional Institute, suffered both continued soreness in her jaw and daily headaches, requiring her to eat nothing other than soft foods. Her continuing physical problems were complicated by certain mental conditions, diagnosed as high depression and acute psychophysiologic distress syndromes. For more than a year thereafter, the claimant's health further deteriorated, despite the treatment given her by several of the employer's authorized physicians.
At length, the claimant, having received no relief from any of the approved doctors, visited her family physician, Dr. Hynick, without the consent of the employer. Dr. Hynick, considering claimant to be suicidal, placed her in a hospital on July 26, 1985, where she was diagnosed as anorexic and suffering from depression secondary to TMJ syndrome. After remaining in the hospital crisis center for nine days, she was released and returned to work, only to be later readmitted for nine days as an outpatient. She was also admitted as an inpatient on December 21-26, 1985.
The claimant requested TTD benefits for her periods of hospitalization, payment of her hospital bills, and the authorization of Dr. Hynick. Both Doctors Hynick and Ballentine, the treating psychiatrist during the claimant's stay at the crisis center, stated in their opinions that the claimant's depression and periods of hospitalization were causally related to the TMJ syndrome she suffered as a result of her industrial accident. The doctors' opinions were rejected by the dc, in view of the evidence introduced by the e/c, showing that the claimant had suffered both from depression and suicidal tendencies before her accident, upon finding that neither doctor was aware of any prior emotional problems.
*1194 We conclude that the dc erroneously rejected the testimony of Doctors Hynick and Ballentine. Although the doctors had not, at the time of their examinations, been provided with an accurate history of the claimant's prior psychiatric problems, neither stated that their opinions as to the causal relationship between the claimant's accident and her emotional problems would have changed had they been fully apprised of the claimant's psychiatric history. In fact, Dr. Ballentine testified that he was aware of two prior suicide attempts made by the claimant, but that his opinion would change only if the claimant's prior history differed substantially from the facts that had been recounted to him. Dr. Hynick was even more emphatic. He stated, after being advised of the claimant's history of prior depression, that his opinion as to the cause of the claimant's depression would not change. The medical opinions of Doctors Hynick and Ballentine are further supported by the testimony of Dr. Conley, the claimant's psychiatrist during her period of preinjury depression, who testified that the claimant's treatment had been terminated because he considered her to be in remission and her condition stable.
The dc was in error in rejecting the unrefuted expert testimony. Where the issue before the dc involves essentially a medical question, the dc should offer a sufficient reason for rejecting expert medical testimony, especially if such testimony is unrefuted. Calleyro v. Mt. Sinai Hospital, 504 So.2d 1336 (Fla. 1st DCA 1987); Jackson v. Dade County School Board, 454 So.2d 765 (Fla. 1st DCA 1984); Castro v. Florida Juice Division, 400 So.2d 1280 (Fla. 1st DCA 1981), rev. denied, 412 So.2d 465 (Fla. 1982). The only reason offered by the dc for rejecting the opinions of Doctors Hynick and Ballentine was the fact that the claimant had not related to the doctors a complete history of her psychiatric illness. In Allman v. Meredith Corp., 451 So.2d 957, 960 (Fla. 1st DCA 1984), this court held that the claimant's lack of credibility did not constitute an adequate basis for the rejection of the only competent, substantial evidence as to the cause of the claimant's condition. See also Jackson v. Dade County School Board (claimant's failure to inform psychiatrist as to her current employment was an insufficient reason to reject psychiatrist's testimony); Calleyro v. Mt. Sinai Hospital (in the absence of contradictory medical testimony because of a single inaccuracy in the history given to the doctor by claimant). The dc's finding that the claimant's depression was not causally related to her accident had the effect of rejecting the only evidence in the record as to the cause of the claimant's condition, and therefore lacks a competent, substantial evidentiary foundation. Accordingly, claimant is entitled to TTD benefits during her periods of hospitalization.
We also find that the claimant is entitled to the payment of her medical bills during her periods of hospitalization, as these were compensable emergency situations. Dr. Hynick testified that he admitted the claimant to the hospital because he thought she was suicidal and in need of immediate attention. Although the dc did not find a causal connection between the claimant's injury and her depression, he did state in his order that "all of the treatment, with the exception of the hospitalizations in July and August 1985 and December 1985, was treatment rendered during nonemergency situations." (e.s.) Because we have decided that the record discloses a causal relationship between the claimant's depression and her industrial accident, the dc's determination that the periods of claimant's hospitalization for her depression were emergency care situations requires also that the claimant receive compensation for the payment of incurred medical expenses during these periods. See Willard Kaufman Co. v. Rawlings, 414 So.2d 641 (Fla. 1st DCA 1982).
Lastly, the dc erred in denying authorization of Dr. Hynick. The record clearly shows this claimant's long and frustrating history of pain and suffering, during which time the doctors authorized by the e/c did little or nothing to alleviate. The claimant became increasingly depressed and discouraged under the care of *1195 her authorized doctors, feeling more comfortable with her own physician. Upon consulting Dr. Hynick, she was hospitalized and given immediate attention. Under Section 440.13(3), Florida Statutes, a deputy may, at any time, for good cause shown, order a change in the claimant's remedial attention, care, or attendance. Given the emergency nature of the claimant's situation  deep depression to the point of being suicidal  we conclude that the claimant has demonstrated good cause justifying a change in her remedial care and treatment by an unauthorized physician.
The deputy's denial of the claim for penalties, attorney's fees, costs and interest is also reversed and remanded to the deputy for further consideration in light of our reversal as to the other issues raised.
REVERSED and REMANDED for further consistent proceedings.
SHIVERS, J., concurs.
ZEHMER, J., concurs specially with an opinion.
ZEHMER, Judge (concurring).
While I fully concur in Judge Ervin's opinion, the following comments more fully explain my reasoning for reversing the deputy commissioner's rejection of the testimony of Doctors Hynick and Ballentine.
At no time during direct or cross-examination of these doctors were they told to assume facts consistent with claimant's undisclosed history of prior psychiatric problems and then asked whether such undisclosed facts would change their expressed opinions. At the very least, these foundational questions are necessary to establish the essential predicate for successfully discrediting the doctors' opinions based on their lack of knowledge of such history. In the absence of such questions and answers, however, whether these additional facts would change either doctor's opinion remains pure conjecture, leaving the record barren of any factual basis for the deputy's decision to reject the testimony.
All too often in workers' compensation cases reviewed here we see a tendency in counsel representing employers and carriers to unduly limit cross-examination of claimant's witnesses or to present no evidence at all, and then argue their case on an alleged absence of evidence and claimant's failure to carry the burden of proof. Certainly this is a valid trial tactic which may be appropriate in some cases. But this is also a risky tactic in workers' compensation cases where, unlike court trials, the deputy commissioner is required by law to explicate the basis for the decision. Because the record before us is silent on whether the claimant's undisclosed history would have changed the rejected opinion testimony, that testimony stands uncontroverted. Counsel's argument regarding the supposed effect of the lack of accurate history is simply not sufficient to sustain the deputy commissioner's decision.